IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 07-541 |
| : | CIVIL NO. 10-5453 |
| ALFONSO HOLDER : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                              **MAY 16, 2011**

Presently before this Court is Petitioner Alfonso Holder's ("Holder") pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "Motion"). For the reasons set forth below, this Motion is denied.

**I.      PROCEDURAL HISTORY**

On September 11, 2007, a federal grand jury returned an indictment of Holder, charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). This charge arose from Holder's possession of a firearm in Philadelphia on June 11, 2007.

On this date, two Philadelphia police officers, Sergeant Staycee Harris ("Sergeant Harris") and Officer William Pitt ("Officer Pitt"), were working together in plain clothes and in an unmarked vehicle when they encountered Holder walking down the 1500 block of North Gratz Street. (N.T. 4/21/08 at 32-33.) Prior to that day, Sergeant Harris had received information from a fellow officer, Michael Rocks ("Officer Rocks"), that Holder had been involved in an incident involving a gun and that he "possibly had a handgun." (Id. at 34-35.) Sergeant Harris noticed a bulge in Holder's left hip area and asked him to "come here, let me talk to you." (Id. at 34.) Holder responded "what do you want?" (Id. at 37.) Sergeant Harris stated:

"just let me talk to you for a minute." (Id.) As Holder walked toward the car, Officer Pitt opened the passenger door, prompting Holder to run. (Id.) Officer Pitt began chasing Holder on foot while Sergeant Harris followed in the unmarked vehicle. Sergeant Harris noticed that Holder was grabbing his left side as he ran. (Id. at 38.) Holder ran into a nearby home, 1512 North 19th Street, and Sergeant Harris, after exiting his vehicle, pursued Holder inside. (Id. at 39-40.) He saw Holder toss a handgun onto a pile of clothes at the top of a third floor landing. (Id. at 40.) Sergeant Harris then arrested Holder and recovered the gun from that landing. (Id. at 41.)

Prior to trial, Holder filed a motion to suppress admission of that firearm which this Court denied. On April 23, 2008, a jury found Holder guilty of this charge. Holder's prior record made him an Armed Career Criminal, pursuant to 18 U.S.C. § 924(e), and he faced a range of 235-293 months in prison. On November 3, 2008, this Court sentenced Holder to 235 months imprisonment and a five-year term of supervised release. Holder timely appealed his conviction to the Third Circuit Court of Appeals and raised three grounds for relief: (1) This Court abused its discretion when questioning a government witness and making comments to defense counsel; (2) This Court violated his due process rights at sentencing by considering his prior arrests that did not result in convictions; and (3) This Court violated his Fifth and Sixth Amendment rights by imposing the statutory sentence mandated by 18 U.S.C. § 924(e) when his prior convictions were not treated as elements of the offense. The Third Circuit rejected these claims and affirmed the conviction and judgment of sentence. See United States v. Holder, 348 Fed. Appx.762 (3d Cir. 2009).

Holder filed the instant pro se Motion on October 18, 2010, and raised the following

claims:[1]

> 1. The police unlawfully entered the residence where Holder was arrested in violation of his Fourth Amendment rights;[2]
>
> 2. The Court improperly sentenced Holder as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e);[3]
>
> 3. The arresting officer relied on stale information and did not have a basis to question Holder as he was walking down the street;[4] and
>
> 4. Prosecution witness, LaDonya Reid, gave inconsistent statements and testimony, thereby misleading the Court.[5]

(Motion at 6-10.)

## II.    STANDARD OF REVIEW

Holder is entitled to relief only if his custody or sentence violate federal law or the

---

[1] After each of Holder's claims, when asked on the § 2255 form whether he raised this particular issue on appeal, Holder responds by placing blame on his appellate counsel. As will be discussed, infra, although Holder does not specifically state that appellate counsel was ineffective, we will interpret these complaints as ineffective counsel claims.

[2] Holder states that he didn't appeal this claim because "I've taken many steps but it was to no avail, my appellate counsel told me the issue [unlawful police entry into the residence] was frivolous." (Motion at 6.)

[3] Holder asserts that this claim was not raised on direct appeal because "An issue pertaining to my sentence was raised in my direct but it wasn't in this manner, and it was denied in my direct, so I am raising new issues. Most importantly appellate submitted my brief which I had no control over." (Id. at 8.)

[4] With regard to this issue, Holder states that "My direct appeal brief was done and prepared by my appellant lawyer and we have very minimum contact in which our lawyer-client relationship was very poor- so I really had no control over my brief." (Id. at 9.)

[5] Concerning this issue, Holder again states that "I've had a very poor relationship with my appellate lawyer and due to the poor relationship and lack of knowledge of the law, I was told that if I'm not going pro se that my involvement would be futile." (Motion at 10.)

Constitution. Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under § 2255. See Gov't of the V. I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the Petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. See Gov't of the V.I. v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting U.S. v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)).

### III. DISCUSSION

**1. Procedural Default**

A petitioner is barred from collaterally attacking his sentence pursuant to § 2255 so far as that attack is based on issues that could have been, but were not, raised on direct appeal. See United States v. Frady, 456 U.S. 152, 162-63 (1982); United States v. Essig, 10 F.3d 968, 978 (3d Cir. 1993). To avoid the bar, defendant must prove both (1) "cause" excusing his failure to raise the issues earlier, and (2) "actual prejudice" resulting from his failure to do so. See Frady,

4

456 U.S. at 168; Essig, 10 F.3d at 978-979. "Cause" must be objective- something external to the petitioner, something that cannot be fairly attributed to him. See Coleman v. Thompson, 501 U.S. 722, 751 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). The "actual prejudice" must be so substantial that the integrity of the entire trial is infected. Frady, 456 U.S. at 169-70. Therefore, unless Holder can show "cause" for his procedural default[6] and "actual prejudice" from it, these issues are waived. Id. at 167.

Here, Holder has failed to raise his four claims in this Motion on direct appeal. Moreover, he has failed to establish cause for such failure and actual prejudice to overcome this failure in order for this Court to consider these claims on their merits. The record indicates that Holder was represented by counsel on appeal, and that three claims were raised on direct appeal which were rejected by the Third Circuit. The fact is that all four of Holder's instant claims were addressable on direct appeal, but he failed to raise them at the proper time. Accordingly, we could dismiss these claims on the basis of procedural default alone. However, we will address the merits of the claims for the reasons below.

**2. Ineffective Assistance of Counsel**

As noted above, although Holder never specifically raises a claim of ineffective assistance of counsel in his Motion, he blames appellate counsel for failing to raise these claims on direct appeal.[7] We will, thus, consider these "complaints" as ineffective assistance of counsel

---

[6]"The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. 500, 504 (2003).

[7]See footnotes 2-5.

claims.[8]  We do this keeping in mind that allegations by pro se petitioners, "'however inartfully pleaded,' are held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  In liberally construing a pro se plaintiff's pleadings, we will "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 687 (3d Cir. 2002) (citing Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). However, we will not "become a surrogate attorney for the party, even one who is proceeding pro se."  Wade v. Nardolillo, No. 06-5201, 2007 WL 1575415, at * 5 (E.D. Pa. May 29, 2007); Thorpe v. Dohman, No. 04-CV-1099, 2004 WL 2397399 (E.D. Pa. Oct. 22, 2004).

In Strickland v. Washington, the Supreme Court of the United States set forth a two-prong test for evaluating a claim of ineffective assistance of counsel.  466 U.S. 668 (1984).  A finding against the petitioner under either prong is sufficient to find for the government.  United States v. Ciancaglini, 945 F. Supp. 813, 816 (E.D. Pa. 1996).

First, a petitioner must show that counsel's performance was deficient, meaning that counsel made errors so serious as to deprive petitioner of the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  This evaluation must be based upon the facts of the case at the time of counsel's conduct.  Id. at 690.  "[T]he right to effective assistance of counsel does not guarantee that an attorney will never err."  Diggs v. Owens, 833 F.2d 439, 446 (3d Cir.

---

[8]We note that claims of ineffective counsel are not subject to the cause and prejudice requirement.  In Massaro, the Supreme Court held that a collateral proceeding under § 2255 is the most appropriate venue for a claim of ineffective assistance of counsel at trial, and that such a claim is not waived even if the defendant is represented by new counsel on direct appeal and does not present the issue at that time.  538 U.S. at 505.

6

1987).  Therefore, to satisfy this prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms.  Id. at 688.  "[A]n attorney is presumed to possess skill and knowledge in sufficient degree to preserve the reliability of the adversarial process and afford his client the benefit of a fair trial."  Diggs, 833 F.2d at 444-45.  Consequently, great deference is given in evaluating counsel's performance, and there is a strong presumption that counsel's challenged actions constitute sound trial strategy.  Strickland, 466 U.S. at 689.

Second, even if the Court finds counsel's conduct to have been deficient, a petitioner must nevertheless show that his defense was prejudiced by the deficient performance in order to justify setting aside the verdict.  United States v. Griffin, No. 91-612, 1993 WL 34927, at *5 (E.D. Pa. Feb. 9, 1993).  To establish the requisite prejudice under this second prong, a petitioner must show that counsel's errors were so serious as to deprive him of a fair trial, i.e., one having a reliable result.  Strickland, 466 U.S. at 694.  In order to do so, a petitioner must establish a reasonable probability that but for counsel's errors, the result of the trial would have been different.  Id.  A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.  Id.  This second prong must be evaluated by a totality of the circumstances existing at the time of the trial since "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Griffin, 1993 WL 34927, at *5 (quoting Strickland, 466 U.S. at 696).

**A. Unlawful Arrest**

Holder asserts that the police unlawfully entered the residence where he was arrested in

violation of his Fourth Amendment rights. This claim, however, is without merit. Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause to arrest exists when there is knowledge of facts and circumstances grounded in reasonably trustworthy information, that warrant belief by a prudent person that an offense has been or is being committed. Beck v. Ohio, 379 U.S. 89, 91 (1964). In United States v. Watson, the Supreme Court held that the warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment. 423 U.S. 411 (1976). The Supreme Court took it a step further in United States v. Santana, and determined that a suspect may not defeat an arrest which has been set in motion in a public place by the expedient of escaping to a private place. 427 U.S. 38 (1976).

Here, it is clear that Sergeant Harris had probable cause to search Holder and then to pursue and arrest him inside 1512 North 19th Street. Sergeant Harris: (1) saw the imprint of what appeared to be a gun handle in Holder's waistband. (N.T. 4/21/08 at 34-35); (2) received information from a fellow officer that Holder had been involved in a recent incident involving a gun and that he "possibly had a handgun." (Id.); (3) witnessed Holder flee when Officer Pitt opened his car door. (Id. at 37); and (4) observed Holder clutch his waist area as he ran suggesting Holder was carrying a gun. (Id.) For these reasons, Sergeant Harris had probable cause to search and arrest Holder in the residence.

Moreover, Holder has no standing to challenge the legality of any search inside of 1512 North 19th Street. Holder did not own these premises, live there, keep possessions there, or have a key to the property. In cases challenging Fourth Amendment violations, defendants lack

standing when they do not have a subjective and reasonable expectation of privacy in the area to be searched. See Minnesota v. Carter, 525 U.S. 83 (1998). Thus, appellate counsel's actions in not raising a meritless claim on direct appeal cannot be deemed "deficient" under Strickland's first prong, and accordingly, this claim is dismissed.

**B. Armed Career Criminal**

Holder next asserts that this Court improperly sentenced him as an Armed Career Criminal pursuant to 18 U.S.C. § 924(e). Holder argues that "the [c]ourt miscalculated my priors in which 3 cases were consolidated was made separate therefore causing Mr. Holder to be improperly sentenced since the evidence used to convict Mr. Holder in state court would be insufficient to prove his guilt in federal court." (Motion at 7.) This claim is without basis in the record.

At sentencing, counsel objected to the presentence report which included "three possession with intent to deliver cases." (N.T. 11/03/08 at 6.) The basis of the objection was that these three cases "occurred within a short period of time and they were consolidated in the State for sentencing purposes," but they should not have counted as separate offenses for Armed Career Criminal sentencing purposes. (Id.) 18 U.S.C. § 924(e)(1) specifically provides that prior offenses to be considered under Armed Career Criminal sentencing must have been "committed on occasions different from one another." 18 U.S.C. § 924 (e)(1).

Here, there is no question that the prior offenses were "committed on occasions different from one another." In fact, Holder's counsel acknowledged such. As noted above, counsel stated that the three cases were only consolidated for "sentencing purposes." (N.T. 11/03/08 at

9

6.)  In addition, counsel stated that "In fact, they occurred on 7-27-01, 1-24-02 and 2-12 of '02." (Id.)  Furthermore, counsel offered no other argument that these case were anything but separate and different offenses.  Thus, appellate counsel's performance cannot be found to be "deficient" under the first element of Strickland for failing to raise a frivolous claim on appeal.

**C.  Stale Information**

Next, Holder asserts that Sergeant Harris acted on stale information when he encountered him on the street and asked to talk to him, and that this was an illegal seizure in violation of his Fourth Amendment rights.  This claim is also without merit.

The Fourth Amendment's protection against unreasonable seizures includes a seizure of the person.  California v. Hodari D., 499 U.S. 621, 624 (1991).  A person is seized for "Terry[9] purposes" when, "taking into account all of the circumstances surrounding the encounter, the police conduct would . . . 'communicate[ ] to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"  Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003) (quoting Kaupp v. Texas, 538 U.S. 626 (2003)).  A seizure, however, does not occur every time a police officer approaches someone to ask a few questions. Such consensual encounters are important tools of law enforcement and need not be based on any suspicion of wrongdoing.  Florida v. Bostick, 501 U.S. 429, 434 (1991); see also Johnson, 332 F.3d at 205. The Third Circuit has held that a seizure does not occur "when an officer approaches an individual in a public place, identifies himself as a law enforcement agent, and asks questions." United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005).  Further, law enforcement officers

---

[9]See Terry v. Ohio, 392 U.S. 1 (1968).

may pose questions and ask for identification even when they have no basis for suspecting a particular individual, as long as they do not use coercive measures to secure cooperation. See id. (citing Bostick, 501 U.S. at 434-35 (1991)).

As stated above, Sergeant Harris testified that he received information from a fellow officer, Officer Rocks, that Holder was involved in some type of an incident involving a gun and he "possibly had a handgun." (N.T. 4/21/08 at 34.) This information prompted Sergeant Harris to pull his unmarked police car alongside Holder and asking him to "come here, let me talk to you." This action clearly falls short of a seizure under the Fourth Amendment.

In United States v. Arvizu, the Supreme Court stated "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." 534 U.S. 266, 273 (2002), (citing United States v. Cortez, 449 U.S. 411, 417-418 (1981)). The Court further stated that "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Id.

Here, Sergeant Harris had sufficient reasonable suspicion to approach Holder and ask to talk to him based on the information given to him by Officer Rocks. His suspicion was confirmed when he saw the imprint of what appeared to be a gun handle in Holder's waistband, when Holder fled when Officer Pitt opened his car door, and when, ultimately, a handgun was recovered after Holder attempted to hide it in a pile of clothes during the pursuit. Thus, once

again, we find that appellate counsel's actions cannot be found to be "deficient" under Strickland for not appealing this baseless claim.

### D. Testimony of LaDonya Reid

Lastly, Holder alleges that prosecution witness, LaDonya Reid ("Reid"), gave inconsistent statements in and out of court which "misled the court." (Motion at 10.) This claim is also without merit.

Reid testified at the suppression hearing that on the date in question she was sitting on the steps of 1512 North 19th Street, which is an apartment building owned by her mother and where she resided, when she saw Holder running around a corner and toward her. (N.T. 4/21/08 at 15-17.) She saw him run past her and "into my mother's building" while being pursued by a police officer who was approximately eight to ten feet behind him. (Id. at 16-17.) She stated that the apartment building has two floors and that she, her niece, and her mother resided in the apartment on the second floor.[10] (Id. at 17-19.) Reid testified further that Holder did not live there, did not have any personal possessions there, nor had a key to the premises. (Id. at 20.)

In his Motion, Holder claims that because he apparently had a child with Reid, that he somehow had standing to challenge the search of these premises and/or had a reasonable expectation of privacy there. (Motion at 10.) This claim, however, fails for two reasons. First, for the same reasons discussed above, Sergeant Harris had probable cause to pursue Holder into this address, and to search and arrest him there. Second, there is no evidence in the record to contradict Reid's testimony that Holder never lived there or had any other reasonable expectation of privacy there. Thus, like Holder's other claims, appellate counsel's actions cannot be deemed

---

[10]This is the apartment where Holder was arrested.

"deficient" under Strickland for failing to include a meritless issue on appeal. Accordingly, this claim is dismissed, and the Motion is denied in its entirety.

An appropriate Order follows.