# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALFONSO HOLDER, | Case No. 2:07-cr-00541-JDW |

## MEMORANDUM

Alfonso Holder, a 40-year-old inmate incarcerated at FCI Terre Haute, brings this *pro se* Motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that his asthma places him at a heightened risk of harm if he contracted COVID-19 while in prison. The Court views Mr. Holder's COVID-related risks to be low, but his prison record suggests he remains a danger to the community. The Court will therefore deny his motion.

I.  **RELEVANT FACTS**

  A.  **Mr. Holder's Criminal History**

Mr. Holder has been in and out of prison since 1998, serving time for two robberies at gunpoint, a probation violation, three instances of felony drug distribution, and three counts of contempt of court for failure to appear in court for the drug cases. He committed the robberies and firearm offense while on parole. On April 23, 2008, a jury convicted Mr. Holder of being a felon in possession of a firearm. On November 3, 2008, he received a sentence of 235 months in prison,

followed by 5 years of supervised release. The sentence was at the low end of the advisory guideline range of 235-293 months.

Mr. Holder has served 177 months of his sentence, approximately 75% of the total. He has a projected release date of November 13, 2025. While incarcerated, Mr. Holder has completed educational coursework. However, he also has received fourteen disciplinary infractions, some of which were for violent behavior, including most recently for threatening a staff member with bodily harm and for possession of a dangerous weapon.

### B. Mr. Holder's Health History

Mr. Holder has had chronic asthma since childhood. He receives daily treatment in prison that includes the use of an inhaler to receive corticosteroids and Singulair. In 2016, he had to receive treatment outside of the prison related to an asthmatic episode. In March 2020, he was hospitalized with asthma and the flu. He also reports being intubated twice over the years. In June 2020, Mr. Holder told a doctor that his asthma was under control. Aside from asthma, he has no other health issues.

### C. Procedural History

Mr. Holder filed a request for home confinement, which was denied on April 30, 2020. He also submitted a request for compassionate release to the Warden on November 19, 2020. He did not receive a response. Mr. Holder filed this Motion on January 22, 2021. He seeks compassionate release due to fear that if he contracted COVID-19, his asthma would exacerbate his illness.

## II. LEGAL STANDARD

Generally, a district court "may not modify a term of imprisonment once it has been imposed…." 18 U.S.C. § 3582(c). However, the compassionate release statute provides an exception to this rule of finality. *See* 18 U.S.C. § 3582(c)(1)(A). Since the passage of the First Step

Act, that statute permits an inmate to self-petition a district court for compassionate release after complying with administrative exhaustion requirements. A court may reduce a petitioner's sentence through compassionate release if it finds that: (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant a reduction. 18 U.S.C. § 3852(c)(1)(A).

Congress has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is not enough. 28 U.S.C. § 994(t). Instead, Congress delegated authority to the United States Sentencing Commission to define the term, and it has done so in Section 1B1.13 of the Sentencing Guidelines. That provision lists (a) medical condition, (b) age, (c) the defendant's family circumstances, and (d) other reasons that the Bureau of Prisons determined. *See* U.S.S.G. § 1B1. 13 cmt. n.1 (A)-(D). The Sentencing Guidelines offer "helpful guidance" but are not "ultimately conclusive." *United States v. Rodriguez*, 451 F. Supp.3d 392, 398 (E.D. Pa. 2020).

During the COVID-19 pandemic, courts have held that an inmate can establish extraordinary and compelling circumstances if the inmate suffers from a medical condition that the CDC has identified as a risk factor for COVID-19. *See id.* at 402. Most, though not all, cases granting compassionate release in light of COVD-19 involve a showing that "COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." *United States v. Somerville*, 463 F. Supp.3d 585, 596 (W.D. Pa. 2020).

Extraordinary and compelling circumstances are not enough. A court must also consider whether a prisoner poses a danger to others or to the community under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged," "the history and

3

characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.*

The sentencing factors listed in 18 U.S.C § 3553 contain a similar analysis of the defendant's history and danger to the community, but also probe sentencing consistency, just punishment, and whether the imposed sentence promotes deterrence. *See* 18 U.S.C. § 3553(a). They include (1) the nature of the circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.*

### III. DISCUSSION

#### A. **Extraordinary Circumstances**

The CDC's most recent guidelines list medical conditions that "*can* make you more likely" to get severely ill from COVID-19, including moderate to severe asthma. CDC, *People with Certain Medical Conditions* (Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). Mr. Holder reports that his asthma is "severe." (ECF No. 59 at 4.) However, for the Court to grant release, Mr. Holder must show that there exists an actual, non-speculative risk of exposure to COVID-19 at FCI Terre Haute and that his individual circumstances make him particularly

susceptible to the virus. *See United States v. Doe*, 833 Fed. Appx. 366, 367-68 (3d Cir. 2020). He has not done so.

"The mere existence of COVID-19 in a society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's … extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Though FCI Terre Haute had a COVID-19 outbreak late in 2020, at this point it has the disease largely under control, with only one inmate having a confirmed active case. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited April 21, 2021). In addition, at the Federal Corrections Complex that includes both FCI Terre Haute and USP Terre Haute, the BOP reports that 840 inmates and 270 staff have been fully vaccinated against COVID-19. *See id.* Mr. Holder's asthma means that BOP will prioritize him for vaccination, further reducing his risk of contracting it. *See Federal Bureau of Prisons Clinical Guidance: COVID-19 Vaccine Guidance*, at 6 (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. In addition, 489/1145 inmates at FCI Terre Haute have contracted COVID. *See BOP:* COVID-*19 Update*. The combination of vaccinated staff and inmates, plus those who have recovered from a prior COVID-19 infection, mitigates the risk of community spread of the virus and therefore reduces the risk to Mr. Holder.

In denying petitions for compassionate release, courts have emphasized the impact of the BOP's increased distribution of vaccines, as well as the facility's current infection status. *See United States v. Sims*, No. 90-cr-80492, 2021 WL 872218, at *1 (E.D. Mich. Mar. 9, 2021); *United States v. Winstanley*, Case No. 6:15-cr-00266-MC, 2021 WL 1197787, at *1 (D. Or. Mar. 29, 2021). They have also considered whether an inmate's asthma is under control. *See United States*

5

*v. Weary*, Cr. No. 19-cr-0482, 2021 WL 1387757, at *5 (E.D. Pa. Apr. 13, 2021). While Mr. Holder faces *some* COVID-related risk, his risk is speculative given the positive developments in the BOP's coronavirus efforts and because his asthma appears to be under control. Thus, Mr. Holder's case does not present an extraordinary and compelling circumstance warranting his release.

    B.    **Danger To Community**

Even if Mr. Holder presented an extraordinary and compelling reason for release, compassionate release would be inappropriate because of the danger he poses to the community and because the sentencing factors counsel against it. Though Mr. Holder says his offenses are non-violent, they include a pattern of serious crimes involving the threatened use of force and firearms. *See United States v. Sloane*, No. 16-cr-400, at *8 (E.D. Pa. June 30, 2020) (denying compassionate release for inmate serving enhanced sentence for unlawful possession of a firearm in part because recidivism and prior drug offenses made him a danger to the community). He claims that conditions of supervised release could address any danger he poses to the community, but his history of parole violations, commission of crimes while on probation, and his failure to appear in court "casts serious doubt on his ability to abide by the terms of supervised relief." *United States v. King*, Case No. 18-cr-20416, 2021 WL 1220864, at *4 (E.D. Mich. Apr. 1, 2021).

Mr. Holder's behavior in prison also suggests that he poses a continued danger to the community. While his prison coursework is commendable, and he states remorse for his most recent offense, his list of disciplinary violations while in prison contains numerous violent infractions. *See United States v. Watson*, No. 07-cr-238, 2021 WL 242478, at *6 (E.D. Pa. Jan. 25, 2021) (petitioner posed danger to the community given, among other things, 14 disciplinary infractions in prison). His release plan, which states that he will live in Philadelphia with his

mother, provides no assurance that he will stay out of trouble. As the Government points out, Mr. Holder committed six felony offenses while residing in Philadelphia from 1996 to 2007.

With respect to the § 3553(a) factors related to sentencing consistency, just punishment, and the promotion of deterrence, the Court notes that Mr. Holder is three months away from serving the mandatory minimum and has served three-fourths of his sentence. However, the Court finds that on balance, his history of recidivism and danger to the community—factors the Court must also consider under § 3553(a) —are more pertinent considerations.

## IV.   CONCLUSION

Mr. Holder's fear of contracting COVID-19 is real, and the Court empathizes. But compassionate release is an extraordinary remedy meant for the exceptional situation where an inmate faces a serious risk of harm that the prison is ill-equipped to handle and release poses little risk to the public. Mr. Holder does not present such an exceptional situation, and he poses a continued danger to the community. In addition, because the Court has resolved Mr. Holder's motion, there is no basis for the Court to appoint counsel. The Court will deny his motion. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
Hon. Joshua D. Wolson
United States District Judge

April 21, 2021